UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY SMITH,

             Plaintiff,                      Case No. 2:14-cv-13795
                                             District Judge David M. Lawson
v.                                           Magistrate Judge Anthony P. Patti

THE FOOD BANK OF EASTERN
MICHIGAN

             Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 48)

**I.    RECOMMENDATION**:  The Court should grant Defendant's motion for

summary judgment and dismiss this action in its entirety.  (DE 48.)

**II.    REPORT**

### A.  Procedural Background

Plaintiff, Tracey Smith, is proceeding without the assistance of counsel.  She

filed her complaint and application to proceed without prepayment of fees on

October 2, 2014.  (DE 1 and 2.) The Court granted her application on October 8,

2014.  (DE 4.)  In her complaint, Plaintiff asserts that her former employer, the

Food Bank of Eastern Michigan ("Food Bank" or "Defendant"), wrongfully

terminated her on the basis of racial discrimination.  She seeks monetary damages

for lost wages, emotional harm, mental anguish, and loss of enjoyment.

Defendant filed this motion for summary judgment on December 11, 2015. Defendant asserts that Plaintiff was terminated as part of a restructuring, in which performance was used as the criteria for termination, and that there is no evidence that race was a motivating factor. Specifically, Defendant argues that Plaintiff: 1) has no direct evidence of discrimination; 2) has no evidence she was replaced by a Caucasian employee; 3) has no evidence she was treated differently than any similarly situated, non-protected employees; 4) and cannot establish that its reason for terminating her was mere pretext. As support for its position, Defendant provides a multitude of exhibits, including Plaintiff's deposition testimony, notes on her performance, emails and an affidavit from her supervisor Adam Dunton, and the affidavits of William Kerr, the president of the Food Bank, and Kyle Laustriat, an African American woman working at the Food Bank.

Plaintiff opposes the motion. In her unsworn response, she maintains that she was terminated because of her race and replaced by a white woman, Savannah Saintpierre. She argues that she received no "write-ups" during her time at the Food Bank and describes her work performance as "excellent." (DE 72 at 9 and 10.) She points to other complaints filed against Defendant at the Michigan Department of Civil Rights as evidence of discrimination. Plaintiff opposes Defendant's use of her deposition testimony in its motion, contending that the

testimony was fraudulently obtained because Defendant had not provided her with its responses to her interrogatories prior to the deposition.

Defendant filed a reply on March 2, 2016, in which it reiterates that Plaintiff has failed to offer competent evidence sufficient to create a genuine dispute of material fact.  (DE 73.)  Defendant contests Plaintiff's interpretation that her deposition was "fraudulent," noting that his Court made no such ruling. Defendant maintains that it is entitled to judgment as a matter of law.

**B. <u>Factual Background</u>**

### 1.    Plaintiff's Tenure at the Food Bank

Adam Dunton, a manager at the Food Bank, hired Plaintiff on September 11, 2013 as an at-will employee.  (DE 48-4 at 1; DE 48-3 at 92[1].)  She worked at the Food Bank as a "SNAP Specialist"[2] for nearly four months until her termination on January 3, 2014.  (Id.; DE 48-26 at 2, Ex. 2 at 88.)  During her nearly four months at the Food Bank, Plaintiff reported only to Mr. Dunton.  (DE 48-3 at 55.)

Throughout her tenure at the Food Bank, Mr. Dunton and Plaintiff exchanged numerous emails about training issues and deficiencies.  On October 3,

---

[1] The page number reflects the deposition page number and not the docketed page number for specificity.

[2] According to Plaintiff, this involved filling out applications for food assistance at various locations, including the Flint Public Library and the Farmer's Market, following up with applicants by phone and traveling out-of-town to food giveaways.  (DE 72 at 7.)

2013, Mr. Dunton contacted plaintiff by email about appropriate attire, and instructed her that, "No more tennis shoes, T-shirts, sweatpants, or jeans are to be worn." (DE 48-8.)[3] On October 8, 2013, Mr. Dunton reminded Plaintiff that she must report her driving miles.  (DE 48-9.)  On October 9, 2013, Mr. Dunton reminded Plaintiff that she needed to provide a client success story.  (DE 48-10.) On October 22, 2013, Mr. Dunton noted that Plaintiff had a "misunderstanding" about an application report and provided instructions on how to address it.  (DE 48-11.)

On November 18, 2013, Mr. Dunton reminded the SNAP Specialists that they were responsible for submitting vehicle requests by the end of the day on the Wednesday of the week prior and that they must get a receipt and fuel slip when refilling the vehicle.  (DE 48-15.)  On December 4, 2013, however, he emailed to remind Ms. Smith that she needed to submit a vehicle request for an appointment that was to occur the next day.  (DE 48-16.)  On December 17, 2013, Mr. Dunton informed Plaintiff that, "You cannot re submit weekly reports that you already have submitted for September."  (DE 48-18.) Plaintiff testified that she does not "remember doing anything like that," but also does not deny it. (DE 48-3 at 108.) On December 30, 2013, Mr. Dunton informed Plaintiff that he needed her

---

[3] Plaintiff denies that she ever dressed inappropriately, noting in her brief that she "has not owned a pair of sweatpants in years . . . ." (DE 72 at 21.)

timesheet by 9:00 am that morning, but she did not email it to him until 11:40 am that morning.  (DE 48-19.)

On December 31, 2013, Plaintiff emailed Sarah Hierman, the Director of Programs and James Richardson, who she met at the company Christmas party, to inform them that she had not been put on the schedule for part of December, and for all of January and February.  (DE 48-20.)  Although she had never reported to either Ms. Hierman or Mr. Richardson, Plaintiff believed that those individuals were the ones she should contact if she was having issues that Mr. Dunton could not address.  (DE 48-3 at 148.)

On January 2, 2014, Mr. Dunton emailed Plaintiff to inform her that the schedule for January was not complete and that they were "looking into some restructuring for the program."  (DE 48-22.)  He also reminded Plaintiff that: 1) expense reports were for out of county trips only; 2) mileage logs must be fully completed for all trips using a company vehicle; and 3) that "certain etiquette" needed to be followed, including speaking volume and "work appropriate topics."  (Id.)

On January 3, 2014, Plaintiff's employment was terminated.  Present at her termination meeting were Mr. Dunton, Ms. Hierman, and HR representative Ramona Filipovich.  (DE 48-26 and 48-27.)  Ms. Hierman explained to Plaintiff that she was being let go due to restructuring caused by budgeting issues.

5

Defendant's explanation is supported by the sworn affidavit of its president,

William Kerr, who explains that shortly after hiring a fourth SNAP Specialist:

> when considering our goals for 2014 and the possibility that our
> funding could be potentially discontinued for the 2015 fiscal year, I,
> along with other members of management, decided it would be best to
> only employed three employees as SNAP Specialists going forward.
>
> After we decided we only needed three SNAP Specialists, we
> considered what employees to retain. Ms. Smith was chosen for
> termination because of her performance issues, which were reported
> by Adam Dunton to Sara Hierman and reflected, in part, and several
> emails between Mr. Dunton and Ms. Smith.

(DE 48-23, ¶¶ 6-7.)  According to Defendant's "Termination Meeting Notes,"

Plaintiff "became almost confrontational" and stated that she had spoken to a

lawyer.  (DE 48-26.)  Plaintiff insinuated that the real reason she was being let go

was because Mr. Dunton did not like her.  (Id.)  Plaintiff admits that she did not

complain about race discrimination during the course of the meeting. (DE 48-3 at

124.)

Plaintiff filed a complaint with the Equal Employment Opportunity

Commission ("EEOC") and received a right to sue letter on August 28, 2014.  (DE

1 at 7-8.)  She then timely commenced the instant action.

### 2.    Plaintiff's Performance at the Food Bank

The parties dispute Plaintiff's performance during her tenure at the Food

Bank, with Defendant arguing that Plaintiff was selected for termination during the

restructuring process due to her performance issues, and Plaintiff denying that she

had any performance issues whatsoever.  In support of its position, Defendant

provides a litany of Plaintiff's performance issues, including failure to comply with

the dress code (DE 48-8), incomplete weekly reports (DE 48-7 and 48-10),

incorrect time sheets (DE 48-7, 48-12, and 48-14), and failure to report to a

location where she was scheduled to work (DE 48-6 and 48-15).  Defendant also

provides email exchanges between Plaintiff and Mr. Dunton documenting these

and other events, as well as a sworn affidavit from Mr. Dunton attesting to these

issues. (DE 48-28.)

In her unsworn response, Plaintiff asserts that she had "no performance

issues" (DE 72 at 15) and that she was only terminated so Defendant could hire a

Caucasian woman, Savanah Saintpierre.[4]  In support, she argues that her

performance could not have been particularly bad, since she was not issued an

official written reprimand or formal performance evaluation as the Employee

Handbook would require. (DE 72 at 9); however, the Handbook provides that the

"first 90 calendar days of employment . . . are considered to be a training period,"

and further provides that "[y]our first evaluation will occur after you complete

your training period." (DE 73-8, PG Id 1454-5.)  As noted by the Food Bank,

"Plaintiff's employment was terminated just 115 days after her employment

_____

[4] An advertisement for Saintpierre's position was apparently posted on November
14, 2013 (DE 48-3 at 160), and she was hired on December 14, 2013 (DE 48-24, ¶
5.)

7

commenced and as a result, Defendant never had an opportunity to complete a formal performance evaluation," although this "does not discredit the **numerous** e-mails and unequivocal testimony of Mr. Dunton regarding Plaintiff's performance." (DE 73 at 5) (emphasis in original).[5]

Plaintiff also focuses heavily on her qualifications for the position, pointing to a letter of recommendation she received from a professor at the University of Michigan, as well as her work experience and education in contrast to that of Ms. Saintpierre. (*See, e.g*., Id. at 13.)[6]  She further contends that Mr. Dunton complimented her about her good performance, that she never violated the dress code, and that her timesheets were "tampered with."  (DE 72 at 21.)  However, she also testified that Mr. Dunton was the reason for the lawsuit, noting that she "wouldn't be sitting here if it wasn't for Adam Dunton, to be honest with you" and that "all he did was snap" at her.  (DE 48-3 at 220 and 111.)

---

[5] Furthermore, Plaintiff does not explain how the numerous emails she received from Mr. Dunton were not "write-ups" regarding her performance.  In fact, she attempts to use those very emails as evidence of "deceit and falsification," noting that there were "too many dates that defendant claimed the plaintiff did something improper."  (DE 72 at 9.)  Plaintiff cannot use both the presence and absence of written documentation in her favor.

[6] It is important to recall, however, that the theory of this case is not discriminatory *hiring*, but rather, disparate treatment in the *termination* process.  Moreover, a mere letter of recommendation related to past job performance is not evidence that Plaintiff performed well in her position with Defendant.

8

C. **Standard**

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'"  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion."  *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also*

9

*Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir.

2011) ("The nonmovant must, however, do more than simply show that there is

some metaphysical doubt as to the material facts . . . .   [T]here must be evidence

upon which a reasonable jury could return a verdict in favor of the non-moving

party to create a genuine dispute.") (internal quotation marks and citations

omitted).  Summary judgment is appropriate when "a motion for summary

judgment is properly made and supported and the nonmoving party fails to respond

with a showing sufficient to establish an essential element of its case. . . ."

*Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23

(1986)).

**D.  <u>Discussion</u>**

Although Plaintiff does not explicitly say so, it is apparent from the face of

her complaint that she brings her claims pursuant to Title VII and alleges

discrimination and disparate treatment on the basis of her race.  For example, she

notes that she is an African American woman who was wrongfully terminated by

three Caucasians and her position was "replaced by a [C]aucasian."  (DE 1 at 1-2.)

Although not statistically probative, it is undisputed that, upon Plaintiff's

departure, the demographics of this small group went from two African-Americans

out of four SNAP Specialist positions, to one out of three. (DE 48 at 8.)

### 1.     The *McDonnell Douglas* Framework

"The *McDonnell Douglas/Burdine* formula is the evidentiary framework applicable . . . to claims brought under Title VII . . . ." *Mitchell v. Toledo Hosp.*, 965 F.2d 577, 582 (6th Cir. 1992).  Following that framework, in order to make out a claim of race discrimination under Title VII, a plaintiff must first establish a *prima facie* case of discrimination, which varies depending on the specific facts of the case.  *Tartt v. Wilson Cnty., Tenn.*, 592 F. App'x 441, 445 (6th Cir. 2014) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Plaintiff can establish a *prima facie* case here by showing that she: (1) is a member of a racial minority; (2) was discharged from her position of employment; (3) was qualified for the position; and (4) was replaced by a person outside the class or a comparable non-protected person was treated better.  *Mitchell*, 964 F.2d at 582; *see also Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (applying the *McDonnell Douglas* framework to a race discrimination case). Furthermore, where, as here, the defendant is claiming that the plaintiff was terminated due to a reduction in force, the plaintiff must also "produce additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."  *Gragg v. Somerset Tech. Coll.*, 373 F.3d 763, 767-68 (6th Cir. 2004).

11

For a claim of disparate treatment, a plaintiff can make a *prima facie* case by showing direct evidence of discrimination. *McDonnell Douglas*, 411 U.S. at 793; *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003). Direct evidence is evidence which, if believed, demonstrates that unlawful discrimination was a motivation for the decision. *Wexler*, 317 F.3d at 570. If a plaintiff cannot show direct evidence of discrimination, he or she may rely on circumstantial evidence that allows a reasonable finder of fact to infer that unlawful discrimination motivated the decision. *Wexler*, 317 F.3d at 570 (citing *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999)).

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Finally, if the defendant offers such a reason, the burden returns to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

The burden of persuasion rests with the plaintiff at all times. *Hunter v. Sec'y of the Army*, 565 F.3d 986, 996 (6th Cir. 2009). To meet this burden in the Title VII context, a plaintiff must demonstrate that race was a "motivating factor" in the employer's discriminatory action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012).

12

### 2.   Plaintiff Fails to Make a *Prima Facie* Case of Discrimination

Here, Defendant argues that Plaintiff fails to make a *prima facie* case of discrimination for several reasons.  First, Defendant asserts that there is no direct evidence of discrimination.  Although Plaintiff contends in her response that she does have direct evidence of discrimination, she has presented none to the Court. Nowhere does she provide direct, admissible evidence that race was a motivating factor in the decision to let her go.  Moreover, she admits in her deposition[7] that no one at the Food Bank ever told her they were treating Caucasian employees differently because of their race, and no one made comments about Plaintiff's race as the reason she was terminated.  (DE 48-3 at 283-84.)

--------

[7] Plaintiff argues that Defendant should not be entitled to use her deposition testimony in this motion because it occurred before Defendant provided Plaintiff with her requested discovery, which she characterizes as fraudulent and lacking in "significance."  (DE 72 at 28.)  However, the Court dealt with this issue on December 23, 2015, concluding that Plaintiff was entitled to the discovery and that, due to Defendant's untimely response, it had waived its objections.  (DE 59.) The Court has not, however, declared the deposition fraudulent or made any ruling that Defendant is not entitled to rely on Plaintiff's testimony in its motion. Notably, Plaintiff admits that at the hearing on December 23, 2015, she "refused the offer from" Defendant's attorney to re-depose her after providing her with the discovery.  (DE 72 at 28.)  Finally, Plaintiff cites no law to demonstrate that Defendant's failure to provide discovery prior to her deposition makes any resulting deposition testimony fraudulent.  Indeed, the Federal Rules of Civil Procedure do not require the sequence of discovery to follow any particular chronological order. Fed. R. Civ. P. 26(d)(3)(A).  Accordingly, Plaintiff's argument on this issue is without merit and Defendant is entitled to rely on Plaintiff's sworn deposition testimony.

Plaintiff also points to other cases filed against Defendant, including a discrimination claim brought by Mr. Richardson that was ultimately found to be without merit by the EEOC.  None of this demonstrates that unlawful discrimination was a motivation for the decision to terminate *Plaintiff*.[8]  However, the failure to offer direct evidence of discrimination is not fatal to her claim, and Defendant does not address whether or not Plaintiff has offered circumstantial evidence of discrimination sufficient to state a *prima facie* claim. The Court notes, however, that the 2:1 to 2:2 to 1:2 black to white ratio change in the SNAP Specialist position is not statistically relevant with such a small employee pool, and thus does not provide circumstantial evidence of racial animus.[9]  *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 267 (6th Cir. 1987) (holding that in a reduction in force case, a sample size of two out of five employees was "not

---

[8] Likewise, *Defendant's* attempt to prove *its* lack of culpability, by repeatedly pointing out that Plaintiff allegedly filed numerous complaints accusing her *prior employers* of racial discrimination (see, e.g., DE 69, ¶ 2), has no bearing on whether discrimination occurred in this instance. While such evidence may have its place at trial for the purpose of impeaching a claimant's credibility, it does nothing to convince the Court that summary judgment is required as a matter of law. The fact that Plaintiff may have applied for unemployment compensation before she was terminated by the Food Bank is similarly inconsequential in the context of this dispositive motion. (See, e.g., DE 69, ¶ 8.)

[9] Plaintiff claims that the remaining African-American was subsequently terminated later on in 2014, bringing the ratio down to 0:2; however, it is undisputed that another African-American was hired for the position in January 2015. (DE 48-28, ¶ 10.)

probative of discrimination."). There is simply nothing here from which a jury could legitimately infer it.

Presumably conceding the first three prima facie elements for purposes of this motion, Defendant does argue, however, that Plaintiff has presented no evidence in support of the fourth element, i.e., that she was replaced by a non-protected employee or that a non-protected person was treated better. The Undersigned agrees with this analysis. First, Plaintiff was not replaced. Plaintiff has identified Savanna Saintpierre, a Caucasian woman, as a similarly situated employee who was hired to replace her. It is undisputed that Ms. Saintpierre was hired on December 14, 2013 (when Plaintiff was still employed) and reported to Mr. Dunton as a SNAP Specialist. (DE 48-24, ¶ 5; 48-3 at 218-19.) It is also undisputed that Plaintiff's termination occurred on January 3, 2014. (DE 72 at 25.) Plaintiff's timesheets show that Plaintiff was working consistently for the Food Bank through December 2013. (DE 48-30 at 20.)

Defendant has provided undisputed, sworn testimony that Saintpierre was not hired as Plaintiff's *replacement*, but rather, "as our *fourth* part-time SNAP Specialist," in other words, *in addition* to Plaintiff. It was only after subsequently determining that funding for the following year was in doubt that Defendant decided to cut back again to three positions, thus having to choose between two very short tenured employees. (DE 48-24, ¶¶ 5-7) (emphasis added). Plaintiff

15

admits that she has heard nothing to the contrary. (DE 48-3 at 222-223.)  A "person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (citing *Sahadi v. Reynolds Chem.*, 636 F.2d 1116, 1117 (6th Cir. 1980)).  Instead, an individual is only "replaced" when "another employee is hired or reassigned to perform the plaintiff's duties."  *Id.*  Defendant has presented undisputed evidence that Ms. Saintpierre was an existing employee at the time of Plaintiff's termination.  Accordingly, there is no evidence that Saintpierre was hired "to replace" her, even if the ultimate *effect* of the force reduction might give that appearance.

Second, in order to establish that a comparable, non-protected person was treated better than she, Plaintiff must show a comparison between herself and the similarly situated non-protected employee.  *Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988).  The Sixth Circuit has described the "similarly situated" element as follows:

> To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

16

*Mitchell*, 964 F.2d at 583 (internal quotations and citations omitted).  This requires "that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original).

As SNAP Specialist, Saintpierre dealt with the same supervisor and was subject to the same standards as Plaintiff, thereby meeting the first two tests to determine whether she is similarly situated.  However, Defendant has provided sufficient evidence to demonstrate that there were "differentiating or mitigating circumstances that would distinguish" the Food Bank's treatment of Ms. Saintpierre in contrast to its termination of Plaintiff's position.  *Mitchell*, 964 F. 2d at 583.  Specifically, Defendant has provided emails about Plaintiff's repeated performance issues during her short tenure working at the Food Bank, along with a sworn affidavit from her supervisor in which he attests to the following:

> Ms. Smith was the only SNAP specialist I supervised that repeatedly supplied incorrect or incomplete reports or timesheets.  Kyle Laustriat did not have those issues, Savannah Saintpierre did not have those issues, and Dale Starr did not have those issues.

(DE 48-28 at ¶ 7.)  In response, Plaintiff merely offers her own opinion that she had no performance issues in comparison to Ms. Saintpierre.  Such unsworn assertions are not sufficient to create a genuine issue of material fact.  *See Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991) ("An unsworn

17

affidavit cannot be used to support or oppose a motion for summary judgment.").[10]

Moreover, Plaintiff admitted in her deposition that no one from the Food Bank

ever told her that Ms. Saintpierre was hired as her replacement.  (DE 48-3 at 221-

23.)  Thus, the only evidence properly before the Court establishes that Savannah

Saintpierre was not a similarly situated employee, as there were circumstances to

differentiate the treatment the two received; namely, Plaintiff's performance issues

and Ms. Saintpierre's lack of the same. Plaintiff has offered no admissible

evidence to establish that Saintpierre exhibited negative *job performance* issues of

any kind, but instead hinges her response on a comparison of their *pre-employment*

qualifications. As noted above, such comparisons are not meaningful in the context

of this case, as Plaintiff is not claiming disparate treatment in *hiring*, but rather, in

*termination*.

Plaintiff also attempts to argue that she was treated differently from HR

Representative Ramona Filipovich.  She asserts that she was required to undergo a

background check prior to her employment, but discovered that Ms. Filipovich had

a criminal record and was still allowed to work at the Fook Bank.  (DE 48-3 at

274.)  However, there is no evidence that Ms. Filipovich was a similarly situated

employee.  She had a different job title than Plaintiff and there is nothing in the

record to indicate that she reported to Mr. Dunton.  Additionally, Plaintiff admitted

---

[10] Notably, Defendant also provides the unsworn affidavit of Sarah Hierman.  (DE
48-26.)  However, this affidavit was not considered in rendering this report.

18

in her deposition that no one told her she needed to have a "clean record" or that she would not be hired by the Food Bank if she had been convicted of a crime. (Id. at 276.) Ms. Filipovich's criminal record does not do anything to demonstrate that Plaintiff was treated less favorably because she had to undergo a background check, and again, these considerations go to the issue of prospective *hiring*, not termination based on actual performance. Accordingly, any arguments with respect to Ms. Filipovich are without merit.

### 3. Plaintiff Fails to Rebut Defendant's Legitimate, Non-Discriminatory Reasons for Her Termination

Even assuming *arguendo* that Plaintiff could make a *prima facie* case, Defendant has presented records and testimony which support legitimate, non-discriminatory reasons for terminating her employment, including evidence of: budgetary concerns which led the Food Bank to reconsider and restructure the position; and, Plaintiff's repeated performance problems, issues which the other SNAP Specialists did not have. These are legitimate, nondiscriminatory reasons for Plaintiff's termination "'which if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)); *see also Succarde v. Fed. Exp. Corp.*, 106 F. App'x 335, 339 (6th Cir. 2004) (poor performance is a legitimate, non-discriminatory reason for termination). Accordingly, Plaintiff

19

must present evidence sufficient to establish that Defendant's proffered reasons were mere pretext for discrimination in order to defeat its motion for summary judgment.  The Sixth Circuit provides that a plaintiff may establish that the employer's proffered reason was mere pretext by showing:

1)    the stated reasons had no basis in fact;

2)    the stated reasons were not the actual reasons; and

3)    that the stated reasons were insufficient to explain the defendant's actions.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).  "But a reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false and that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  Furthermore, "the aim is not to . . . question the soundness of an employer's judgment," where an employee is not performing to the employer's satisfaction.  *McDonald v. Union Camp Corp.*, 828 F.2d 1155, 1160 (6th Cir. 1990).

Here, Plaintiff has presented no evidence to demonstrate that Defendant's budget issues and performance-related justification for her termination was pretext for discrimination.  *See Manzer v. Diamond Shamrock Chemicals, Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994) (overruled on other grounds) ("The jury may not reject an employer's explanation . . . unless there is a sufficient basis in the evidence for doing so.").  Further, Plaintiff's speculation that Defendant's articulated reasons

20

for her termination were pretextual, and her own assertion that she had no performance issues, is not enough to survive summary judgment. *See Brennan Tractor Supply Co.*, 237 F. App'x 9, 19-20 (6th Cir. 2007) ("[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment . . . . [A] court may not reject an employer's explanation [of its actions] unless there is sufficient basis in the evidence for doing so." (internal citations omitted)); *Metz v. Titanium Metals Corp.*, 475 F. App'x 33, 36 (6th Cir. 2012) (plaintiff's disagreement with defendant's assessment of his or her value does not evidence discrimination).

Plaintiff makes no showing that the Food Bank's budgetary concerns and the need for a sudden restructuring were unfounded, nor that her well-documented, sub-par performance did not occur. While her documented statement at the time of her termination that she was being let go because the program coordinator "did not like her" may indeed be close to the mark in light of her performance as a trainee (DE 48-27), she has nevertheless failed to present any evidence that would demonstrate that the stated reasons for her termination are pretextual.[11]  *See Geevarghese v. Cahill*, 983 F.2d 1066, at *4 (table) (6th Cir. 1992) (personality

---

[11] For example, she might have, but did not, come forward with affidavits or deposition testimony from fellow workers which showed the falsity of her supervisor's series of corrective email communications, but instead, flippantly asserted that, "Everything he says, I deny, unless it's a nice thing." (DE 48-3 at 110.)

conflicts alone cannot supply a basis for finding intentional discrimination) (citing *Grubb v. W.A. Memorial Hosp.*, 741 F.2d 1486, 1497-98 (overturned on other grounds, 759 F.2d 546)); *Elkheir v. Ashcroft*, 28 F. App'x 506, 507 (6th Cir. 2002) ("manifestations of a personality conflict" do not "equate with discriminatory animus").

Plaintiff points to her Michigan Department of Civil Rights ("MDCR") report as evidence of the real, non-pretextual reason why she was terminated.  (DE 72 at 7.)  Specifically, the report indicates that Plaintiff *believed* she was treated differently because of her race and "discharged under the guise of company restructuring."  (DE 72-1 at 5.)  However, the report also contains witness statements from Sarah Hireman, Mona Filipovich, James Richardson, and Adam Dunton, all contradicting Plaintiff's account and reiterating that Plaintiff was terminated due to restructuring.  (Id. at 6-9.)  The charge was ultimately dismissed. More importantly, such a report is inadmissible at this stage of the litigation.  The Sixth Circuit has described such reports as containing "self-serving and hearsay statements."  *Waller v. Thames and Pepsi-Cola Corp.*, 852 F.2d 569, 1988 WL 76532, at *2 (6th Cir. 1988).  As such, a plaintiff "cannot establish a genuine issue of material fact through the introduction of the MDCR report since this court is proscribed from reviewing the report at this stage in the litigation."  *Terwilliger v. GMRI, Inc.*, 952 F. Supp. 1224, 1229 (E.D. Mich. 1997).

22

Furthermore, to the extent Plaintiff attempts to argue that the timing of Ms. Saintpierre's hire is evidence of pretext, such an argument is unavailing.  (See, e.g., DE 72 at 8.)  It is well settled that timing alone cannot serve as a basis for pretext. *Donald v. Sybra Inc.*, 667 F.3d 757, 763 (6th Cir. 2012).  Even if Plaintiff could prove that the reasons given, namely, and economic need to reduce the number of SNAP Specialists and her less than stellar performance as a new hire, were false, she has submitted no evidence to show that racial discrimination was the real reason for her termination. She therefore cannot prevail on her claim.

## III.   CONCLUSION

Plaintiff has not established that she was replaced by or treated disparately from a person outside of her protected class. For the sake of argument, even if she had, it is not enough for her to simply demonstrate that the reason given for her employment separation was a pretext.  She must be able to present evidence that answers the question, "A pretext for what?" And the answer to that question must be, in order to withstand a motion for summary judgment, "[a] pretext for racial discrimination."  Or put otherwise, she must have admissible evidence that the *real reason* for her termination, or at least one of them, was her race.  Speculation, hunches, or feelings that it "must be so" are not enough. She must present to the Court something more than a "metaphysical doubt." *Matsushita Elec. Indus. Co. v.*

23

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  She has not done so here.

Summary judgment should be granted in Defendant's favor.  (DE 48.)

## IV.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: May 31, 2016                 s/Anthony P. Patti
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on May 31, 2016, electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manager for the
                                    Honorable Anthony P. Patti

25