UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY SMITH,

              Plaintiff,                             Case Number 14-13795

v.                                                   Honorable David M. Lawson
                                                     Magistrate Judge Anthony P. Patti

THE FOOD BANK OF EASTERN
MICHIGAN,

              Defendant .
_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING CASE

Plaintiff Tracey Smith filed a complaint representing herself alleging that she was fired from her job at defendant Food Bank of Eastern Michigan on account of her race, 115 days after she was hired. The Court referred this case to Magistrate Judge Anthony P. Patti for pretrial management. Thereafter, the defendant filed a motion for summary judgment. Judge Patti filed a report recommending that the motion be granted. Believing that the plaintiff had not filed objections to the report and recommendation, the Court adopted the recommendation and dismissed the case. The Court vacated that judgment when it discovered that timely objections had been received by the Clerk of Court but not docketed promptly. The case is now before the Court for fresh review in light of the motion, response, report, and objections.

I.

The magistrate judge read the *pro se* complaint as pleading a case under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*. The record indicates that plaintiff Tracey Smith, an African American, was hired by the defendant The Food Bank of Eastern Michigan (the Food

Bank) on September 11, 2013 as a Supplemental Nutrition Assistance Program (SNAP) specialist. She was hired by Adam Dunton, a manager at the Food Bank. On January 3, 2014 — about four months later — at a termination meeting with Dunton and two other Food Bank representatives, she was terminated purportedly because of restructuring and the plaintiff's performance issues. According to the plaintiff, the real reason she was terminated was because of Dunton's racial animus toward African Americans.

Magistrate Judge Patti concluded that the undisputed record did not support the plaintiff's allegations and recommended that the defendant's summary judgment be granted and the case be dismissed. Smith filed 25 objections to the report and recommendation.

## II.

The filing of timely objections to a report and recommendation requires the Court to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the Court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review;

making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

Judge Patti's report was responsive to the defendant's motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." *Id.* at 558. (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Ibid.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet her burden of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact. *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000). A fact is "material" if its resolution affects the outcome of the lawsuit. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). "Materiality" is determined by the substantive law claim. *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a)(1). To prove race discrimination under Title VII, the plaintiff must offer evidence that the defendant took adverse action against her and that race was a motivating factor. *Ondricko v. MGM Grand Detroit, LLC,* 689 F.3d 642, 649 (6th Cir. 2012).

With these rules, procedures, and legal principles in mind, the Court will turn to the plaintiff's objections.

A.

As noted above, the plaintiff made 25 objections to the magistrate judge's report. Objections 3, 8, 9, 12, 13, 14, 15, 18, 21, and 23 are insufficient to warrant review, because they do not identify any specific defect in the magistrate judge's report and recommendation, and they do not set forth any factual basis or legal authority to support a conclusion that the magistrate judge erred. "Overly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general," *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380), and "the failure to file specific objections to a magistrate's report constitutes a waiver of those objections," *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

B. Objections 1, 2, and 25

In the plaintiff's first, second, and twenty-fifth objections, she argues that the magistrate judge erred by finding that there is no direct evidence of discrimination committed by the defendant. She argues that she is not the only individual that filed a lawsuit against the defendant and that such evidence "speaks for itself." *Id.* at 2-3. In support, she points to exhibits 8 and 9 attached to her response to the summary judgment motion. Neither exhibit, however, amounts to direct evidence of discrimination.

"Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was [the] motivating factor in the employer's actions. It does not require the fact finder to draw any inferences to reach that conclusion." *Sharp v. Aker*

*Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc), and *Amini v. Oberlin Coll.*, 440 F.3d 350, 359 (6th Cir. 2006)) (quotation marks omitted). For example, "[d]iscriminatory remarks by decision makers and those who significantly influence the decision-making process can constitute direct evidence of discrimination." *Ibid.* (citations omitted). But we have none of that here, and the plaintiff's exhibits fall far short of the mark.

Exhibit 8 is a copy of the first page of the register of actions of a complaint brought against the Food Bank by a James Richardson. It does not state the nature of the case or the disposition of the case against the defendant. Exhibit 9 is the Michigan Department of Civil Rights (MDCR) investigative report prepared after the investigation of the plaintiff's complaint to the MDCR. The report largely repeats the plaintiff's allegations in this case, although at the end of the report is a charge of discrimination by one Eric Armstrong that contains an allegation that might amount to direct discrimination *in his case*. That does not constitute direct evidence in *this* case, however.

The plaintiff also argues that she was replaced by Savannah Saintpierre, a Caucasian woman with less experience than the plaintiff, and that amounts to direct evidence of discrimination. It is not. Although the two employees are of different races, one would have to draw an inference that the employee swap was racially motivated, and therefore the evidentiary force of those facts is not "direct."

Moreover, the defendant argues, and the magistrate found, that Saintpierre was not hired to replace the plaintiff. And even if she were hired to replace the plaintiff, such evidence would be circumstantial. The defendant has the better part of the argument. The plaintiff argues that other people's complaints against the defendant speak for themselves. But nothing in those complaints

speaks directly to the plaintiff's claims in this case. The plaintiff presumably asks the Court to infer that alleged discrimination in one case necessarily means there was discrimination in this case. But, as noted above, because an inference would be required to complete the circle of that argument, that is not direct evidence.

The Court will overrule the plaintiff's first, second, and twenty-fifth objections.

### C. Objection 20

It appears that the plaintiff argues in her twentieth objection that the magistrate judge erred by using the *McDonnell Douglas* burden-shifting structure in his analysis because she offered strong direct evidence of discrimination. As noted above, the plaintiff failed to offer direct evidence of discrimination.

A plaintiff also may establish discrimination by circumstantial evidence. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547-48 (6th Cir. 2004). If, as here, the plaintiff fails to offer any direct evidence of discrimination, courts usually apply the three-step legal analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later clarified by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), to assess the circumstantial evidence. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004). Under the *McDonnel Douglas* structure, "the employee has the initial burden of establishing [her] *prima facie* case; if [s]he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions; finally, the employee has the burden of rebutting the employer's proffered reasons by showing them to be pretextual." *Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014).

The magistrate judge applied the correct test, and therefore objection 20 will be overruled.

D. Objection 17

A plaintiff may establish a *prima facie* case of discrimination "by showing that: (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was replaced by a person outside of the protected class." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (citations omitted). The magistrate judge determined that the plaintiff had not established a *prima facie* case of discrimination, mainly because there was no proof on the fourth element. The focus of that element was on Savannah Saintpierre, a Caucasian woman who was hired as a SNAP specialist several weeks before the plaintiff was terminated, and who also reported to Adam Dunton, the plaintiff's supervisor.

The magistrate judge concluded that Saintpierre did not replace the plaintiff, based on the timing of Saintpierre's hire and the plaintiff's termination following restructuring. The plaintiff did not object to that finding or challenge the conclusion that she failed to establish a *prima facie* case. In her seventeenth objection, however, she argued that the magistrate judge misread her complaint when he said that "the theory" of her case "is non-discriminatory." Obj. at 15. To support her objection, the plaintiff reiterates her arguments that a less qualified Caucasian, Saintpierre, replaced her as a SNAP specialist and that the MDCR has cases pending concerning racial discrimination against the defendant.

It appears, however, that it is the plaintiff who misreads the report and recommendation. The magistrate judge was making the point that evidence of Saintpierre's lesser qualifications was not relevant — or at most a makeweight — because "the theory of this case is not discriminatory *hiring*, but rather, disparate treatment in the *termination* process." R&R at 8 n.6. (emphasis in original). The magistrate judge never said that the theory of this case is non-discriminatory. Moreover, the

relative qualifications of the employees played no role in the selection of who would be terminated; the decision was not based on qualifications but rather performance.

This objection will be overruled. The failure to challenge effectively the finding that no *prima facie* case was made out is fatal to the plaintiff's Title VII claim. Nonetheless, the Court will address the objections that focus on the question of pretext.

### E. Objection 4

The plaintiff can create a fact question on whether the defendant's reason for termination was a pretext for illegal discrimination by offering some evidence "'(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action.'" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)). In her fourth objection, the plaintiff argues that the magistrate judge erred by finding that the defendant's reasons for terminating her were not pretextual. She argues that she "has fully proved through emails, Michigan Department of Civil Rights, reports of other individuals claiming to have been discriminated against, her cross examination deposition, etc., that the [defendant's] employees ha[ve] totally been untruthful about the plaintiff." The defendant argues that the plaintiff has not offered any admissible evidence on that score.

The plaintiff primarily takes issue with her supervisor, Adam Dunton, who, according to her, "is the key person really in this, all of this happened. I wouldn't be sitting here if it wasn't for Adam Dunton, to be honest with you." It is Dunton who authored the emails that pointed out the flaws in the plaintiff's performance. She has not offered evidence that those criticisms had no basis in fact, nor has she shown that they actually masked Dunton's racial animus. On that last point, the plaintiff

has another evidentiary obstacle to contend with, because Dunton both hired and fired the plaintiff. At play here is a concept known as the "same actor inference."

The same actor inference "allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 463 (6th Cir. 1995). The reason for the inference is that "[c]laims that employer animus exists in termination but not in hiring seem irrational. . . . It hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Ibid.* (quoting *Proud v. Stone*, 945 F.2d 797 (4th Cir. 1991)). Therefore, "'in cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.'" *Ibid.* (quoting *Proud*, 945 F.2d at 797).

As noted above, Dunton hired the plaintiff and participated in her termination only four months later. That creates a strong inference that Dunton did not discriminate illegally against the plaintiff. The plaintiff's circumstantial evidence of discrimination, such as it is, focuses not on her but on others; and it consists of unspecified emails and generally her deposition. But the plaintiff did not provide any page citations or explanation how her testimony shows that the defendant's reasons for termination were pretextual. The plaintiff's evidence does not show pretext or put a dent in the same actor inference. The Court will overrule the fourth objection.

F. Objection 7

In her seventh objection, the plaintiff argues that the magistrate judge erred by stating that she was contacted about appropriate attire in the workplace (presumably addressing pretext). The

plaintiff asserts that all of the employees were contacted about proper attire and therefore the defendant's case must fail. The defendant cites an email that supports the magistrate judge's finding, and also points out that Dunton submitted an affidavit testifying that among the plaintiff's performance issues were that she wore sweatpants in violation of the Food Bank's dress code.

The plaintiff is correct that the email in question was addressed to all staff. However, it is not clear why that fact would undermine the magistrate judge's determination. That particular email exchange was one of several the magistrate judge considered. For example, among other contacts, Dunton sent an email to the plaintiff stating the following:

> To follow up our phone conversation these are a few of the things that we have went over. The schedule is not yet complete due to the holiday break and we are also looking into some restructuring for the program. Some of the things that you and I have discussed multiple times that we have noticed and are watching are that expense reports are for out of county trips only, and mileage logs are to be fully completed for all trips when using a Food Bank Vehicle. There have been multiple occasions of paperwork submission error. I have received duplicate time sheets as well as not fully
> completed mileage forms. As we discussed previously, when in the office, there is certain etiquette that needs to be followed regarding volume level, there are times when the others in the office are disrupted or on the phone and your volume has been louder than necessary, and work appropriate topics. Also, when using a Food Bank vehicle, there are channels that we discussed that need to be followed. Dispatch is not responsible for pre trip preparations for the vehicles.

Def.'s Mot., Ex. 21 [48-22].

Even without the email addressed to all staff, the record contains ample evidence to support the magistrate judge's determination that there were concerns with the plaintiff's conduct at the Food Bank, and the defendant's reasons for terminating the plaintiff were not pretextual. The Court will overrule the plaintiff's seventh objection.

G. Objection 11

In the plaintiff's eleventh objection, she argues that the magistrate judge erred by not finding that the restructuring justification was pretextual. She contends that the Food Bank ran an advertisement for a SNAP specialist that eventually led to hiring Saintpierre, which she believes demonstrates the restructuring justification was pretext. The defendant argues that hiring Saintpierre in December 2013 was unrelated to the decision at the end of December 2013 to eliminate a SNAP specialist position.

The plaintiff's citation of the alleged advertisement does not appear to be in the record. The magistrate notes, however, that the plaintiff discussed the advertisement in her deposition. The plaintiff testified that the Food Bank posted an advertisement for a part-time SNAP specialist on November 14, 2013. Saintpierre was hired for that position on December 14, 2013. The magistrate judge found that the undisputed evidence shows that Saintpierre was hired weeks before the plaintiff's termination, and that the plaintiff worked consistently during that period. The magistrate judge concluded that Saintpierre was not hired to replace the plaintiff; rather, she was hired as a fourth part-time SNAP Specialist *in addition* to the plaintiff. The defendant offered evidence that the decision to eliminate the SNAP position at the end of December — soon after the fourth position was added — was based on a funding shortfall. The plaintiff has not offered any evidence that contradicts that position or demonstrates that it was a pretext for racial discrimination. The plaintiff's eleventh objection will be overruled.

H. Objections 5 and 24

In her fifth and twenty-fourth objections, the plaintiff argues that the magistrate judge erred by stating that Dunton was a manager at the Food Bank. She contends that this is important because

Dunton did not fire her, but "caused" her to be fired. And such a factual finding hides that Saintpierre was eventually promoted to Dunton's project coordinator position, which she says demonstrates that the Food Bank's restructuring due to budgetary concerns was pretext. The defendant argues that Dunton was the *plaintiff's manager* because he supervised her directly. It argues that Dunton's title does not demonstrate that the defendant offered any untruthful information. Furthermore, the defendant notes that Saintpierre was promoted to Dunton's position after she had been employed there for 18 months, which postdated both the plaintiff's and Dunton's departure from the Food Bank.

The magistrate judge did not refer to Dunton's title. Instead, he noted that Dunton was "a manager" at the Food Bank. The magistrate judge used the term "manager" in the generic sense, in that Dunton managed other employees. Characterizing Dunton as a manager does not compromise the magistrate judge's analysis. Additionally, the plaintiff's argument that Saintpierre's promotion shows that the Food Bank's reasons for terminating her were pretextual is without merit. The plaintiff was terminated on January 3, 2014. Saintpierre was recommended for promotion on June 29, 2015. A promotion 18 months after the plaintiff's termination does not show that the defendant's proffered reason for termination (budgetary concerns) was pretextual. There is simply no temporal relationship between the two events. Furthermore, the documentation also notes that Saintpierre's promotion was guaranteed for only three months, and that it was to be made clear to Saintpierre that the position might not continue due to budgetary concerns. Saintpierre's promotion documents, if anything, reinforce the defendant's position that budgetary concerns motivate, in part, staffing at the Food Bank. These objection will be overruled.

I. Objection 19

In her nineteenth objection, the plaintiff says that the grant that allows the defendant to employee SNAP specialists covers only three positions, but she offers no evidence of that. Instead, she says that "[t]he defendant or plaintiff could provide the grant information in court which would show the grant only covers three SNAP specialists." She argues that this shows that Saintpierre was hired to replace her because Saintpierre was a fourth SNAP specialist. The defendant argues that the plaintiff has not proffered any grant information establishing that the defendant's explanation of restructuring was false or that Saintpierre was hired as her replacement.

The plaintiff made this same argument in her response to the defendant's motion for summary judgment. However, no information concerning the grant appears in the record. The plaintiff notes that either party could provide the grant information, which no doubt is true. But neither party *has* provided the information. As noted earlier, once the moving party demonstrates the absence of a material fact, the party opposing a motion for summary judgment has the obligation to designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Other than the plaintiff's unsupported reference to an alleged grant, there is no evidence that a grant even existed, let alone how much funding it provided for SNAP specialists. The Court, therefore, will overrule the plaintiff's nineteenth objection.

J. Objection 16

In her sixteenth objection, the plaintiff argues that the magistrate judge erred by stating that the plaintiff does not explain how the numerous emails she received from Dunton were not "write ups." The plaintiff contends that the emails she received were not related to discipline. It appears

that she is suggesting that a reprimand must be made formally. She asserts that she has received a certification in management and knows whether or not something is intended to be a "write up." The defendant argues that there is no requirement that a reprimand must be provided in a formal document.

There can be no question that the email exchanges between Dunton and the plaintiff were addressing her performance deficits. The magistrate judge characterized fairly the nature and purpose of the emails. And the defendant is correct, that there is no requirement that reprimands be made in a formal document. Therefore, the Court will overrule the plaintiff's sixteenth objection.

K. Objections 6 and 10

In her sixth objection, the plaintiff argues that the magistrate judge erred by considering numerous emails exchanged between the plaintiff and Dunton. She says that the evidence was "falsified" because the emails were not signed. She also argues that the emails demonstrate Dunton's alleged racism. And she argues that one of the emails by Dunton praised the plaintiff for her good work. In her tenth objection, she again challenges the legitimacy of the emails relied on by the defendant to demonstrate deficient work performance. Additionally, the plaintiff argues that the emails show that Dunton emailed Sarah Hierman, the director of programs, directly instead of Dunton's direct supervisor, James Richardson. The plaintiff argues this is significant because Richardson is African American, and Hierman is Caucasian.

The defendant argues that the plaintiff does not explain how the emails were allegedly "falsified." Additionally, one email praising the plaintiff for one project does not demonstrate racial animus. Morever, the defendant points out that Richardson told the Michigan Department of Civil

Rights (MDCR) during its investigation that he did not oversee the plaintiff's position and was not involved with the decision to terminate her employment.

The issue of whether the email exchanges considered by the magistrate judge were somehow fraudulent is raised for the first time in the plaintiff's objections. Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived. *Ward v. United States*, 208 F.3d 216, *1 (6th Cir. 2000) (table decision) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996)); *see, e.g.*, *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) (holding that "an unsuccessful party is not entitled as of right to de novo review . . . of an argument never seasonably raised before the magistrate"); *Greenhow v. Secretary of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by United States v. Hardesty,* 977 F.2d 1347, 1348 (9th Cir. 1992) (en banc).

As for the positive email sent by Dunton, one positive email does not undermine the magistrate's finding that throughout the plaintiff's tenure at the Food Bank she received numerous emails addressing training issues and deficiencies with her performance. The defendant's position is that because of restructuring, a SNAP specialist position needed to be eliminated. In order to determine which employee should be terminated, the Food Bank took into consideration the job performance of two recently hired employees. Because the plaintiff had some work deficiencies, the Food Bank chose to terminate the plaintiff rather than the other recently hired employee. It was never alleged that *all* of the plaintiff's work was lacking, only that it was deficient in some regards.

Therefore, the defendant is correct that one positive email does not demonstrate an error in the magistrate judge's report.

The defendant finds it significant that an MDCR report noted that Richardson did not manage the plaintiff. However, as noted by the magistrate judge, an MDCR report "is inadmissible at this stage of the litigation. The Sixth Circuit has described such reports as containing 'self-serving and hearsay statements.'" R&R at 22 (quoting *Waller v. Thames and Pepsi-Cola Corp.*, 852 F.2d 569, 1988 WL 76532, at *2 (6th Cir. 1988)). Nonetheless, the plaintiff has not demonstrated that Richardson should have been consulted. It appears that the chain of command in place during the time the plaintiff was employed at the Food Bank had Dunton reporting to Richardson, who in turn reported to Hierman. The plaintiff assumes that Richardson should have participated in the decision to terminate the plaintiff, but she offers no evidence to support that assertion. Without some evidence that the Food Bank's practice was to funnel termination decisions through Richardson, even though Hierman was the ultimate decision maker, the plaintiff's argument lacks merit. The Court will overrule the plaintiff's sixth and tenth objections.

### L. Objection 22

In her twenty-second objection, the plaintiff argues that the magistrate judge erred by considering her deposition testimony because it was a "fraudulent deposition." She argues that her deposition was fraudulent because the defendant did not provide her with requested discovery information before taking her deposition. The magistrate judge addressed this issue on December 23, 2015, and again in the report. The plaintiff has not explained how the magistrate judge's explanation was wrong.

On December 23, 2015, the magistrate judge entered an order granting the plaintiff's motions to compel discovery and ordering the defendant to respond to specific discovery requests made by the plaintiff. In the magistrate judge's report, he addressed the plaintiff's "fraudulent deposition" argument. He noted that Federal Rule of Civil Procedure 26(d)(3)(A) does not require a specific sequence of discovery. He concluded that the plaintiff's fraudulent deposition argument lacked merit. And he said that at the hearing on the plaintiff's various motions to compel that the plaintiff declined the defendant's offer to be re-deposed after being provided with the delinquent discovery.

The plaintiff has not furnished any legal authority that demonstrates that the magistrate relied improperly on her deposition testimony. She was given the opportunity to remedy any alleged impropriety by the defendant in a second deposition, but she declined to take advantage of that opportunity. Therefore, the plaintiff's twenty-second objection will be overruled.

III.

The magistrate correctly assessed the record and in light of the proper legal authority.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt. #76] is **ADOPTED**, and the plaintiff's objections [dkt. #85] are **OVERRULED**.

It is further **ORDERED** that the defendant's motion for summary judgment [dkt. #48] is **GRANTED**.

It is further **ORDERED** that case is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: April 24, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 24, 2017.

                                          s/Susan Pinkowski
                                          SUSAN PINKOWSKI